IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



ORCHARD PARK PLAZA, L.L.C., )
an Illinois limited liability company, )
         Plaintiff, )
          )
v. )    04 C 4233
          )
DOLGENCORP., INC., a Kentucky )    Judge Ronald A. Guzmán
corporation, )
         Defendant. )
          )

## MEMORANDUM OPINION AND ORDER

Plaintiff is an Illinois limited liability company that owns the Orchard Park Plaza located in Park Forest, Illinois (hereinafter "the Premises"). Defendant is a Kentucky corporation with its principal place of business in Goodlettsville, Tennessee. Defendant operates a retail store doing business as Dollar General. The parties entered into a lease agreement on January 14, 1999 ("the Lease"). Article II of the Lease allows defendant to "use the demised Premises for the retail sale of general merchandise of the type sold in other Dollar General Stores" (hereinafter "the use provision"). (Ex. 1, Lease, Art. II.) At the time the parties entered into the Lease, defendant had not installed refrigerators or freezers at the Premises or begun the sale of refrigerated or frozen food or groceries at the Premises or at its other stores. However, defendant sold dry, non-perishable foods in relatively small amounts.

1

The Lease contained a provision which permitted the defendant to terminate its lease if a grocery anchor store ceased to exist in the shopping plaza. Further, by the terms of its lease with the grocery anchor store, plaintiff agreed that "during the term of this Lease, it will not directly or indirectly lease or allow any other tenant in the Shopping Center to operate a supermarket, grocery store or convenience food store, or any other store which sells food for consumption off of the premises (except for a fast food or drive through operation)."[1]

In June 2003, defendant installed freezers and refrigerators on the Premises and began selling refrigerated and frozen food and groceries. Plaintiff's anchor grocery store soon complained, and plaintiff informed defendant that it objected to such sales based upon the terms of the Lease. In response, defendant ceased selling such merchandise. However, by December 2003, defendants had recommenced the sale of the objected-to food and groceries. Plaintiff filed suit seeking damages and an injunction as well as other relief provided for in the lease. The case was heard as a bench trial.

Count I of the Complaint alleges a breach of contract. The question posed is simply this: Does defendant's sale of groceries breach the use provision in the Lease? Initially, the Court addresses the parole evidence question. Magistrate Judge Ira H. Levin overruled defendant's motion in limine seeking to bar parole evidence. Defendant did not object to the ruling, and thus, it is the law of the case. Further, the Court finds, in accord with Magistrate Judge Levin's ruling,

---

[1] Although the evidence is not entirely clear, it appears that this provision was contained in the lease with the original grocery store anchor, Jewel Food Stores, as well as Jewel's replacement anchor, SLC Foods Inc., doing business as Sterk's Super Foods. Sterk's Super Foods was the grocery store anchor at Orchard Park Plaza at the time of defendant's alleged breach.

that the language of the use provision is ambiguous because it refers to merchandise "of the type sold in other Dollar General Stores." The Lease neither describes such merchandise nor defines what is meant by the term "of the type." For example, is food in its entirety considered a type of merchandise such that by selling any food at all in its other stores at the time the lease was entered into, defendant is allowed to sell any kind of food it wants in the future? Or, did the parties intend to differentiate not just between food and other types of merchandise, but between different types of foods as well? Both are reasonable interpretations. It is also unclear whether the use provision was intended to freeze the definition of allowable merchandise to the mix of merchandise sold at other Dollar General stores at the time the lease was entered into, or if it allows for the merchandise sold at the Orchard Park store to change over time if the type of merchandise in other Dollar General stores changes. Finally, the lease is also ambiguous in its provisions contained in Rule E of Exhibit E to the Lease. This rule declares that Lessee "shall not do, or permit to be done, anything in or about the Premises which will in any way obstruct or interfere with the rights of other tenants . . . or injure or annoy them . . . nor allow the Premises to be used for any unlawful or objectionable purpose . . . ." (Ex.1, Lease, Ex. E, Rules and Regulations ¶ E.) Whether this provision was intended to bar certain uses which would compete with the anchor grocery tenant's use of the Premises is also subject to more than one reasonable interpretation. For all of these reasons, the Court allows parole evidence to explain and clarify the meaning of the language and the intent of the parties when they agreed to these ambiguous terms.

In interpreting the Lease, the Court attempts to ascertain the intention of the parties.

> The cardinal rule in the interpretation of a lease is that the court should ascertain and give effect to the intention of the parties, and that in so doing the court may take into consideration the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease, as well as the purpose or object the parties had in mind in entering into the lease.

*Chi. Title & Trust Co. v. Northwestern Univ.*, 344 N.E.2d 52, 55 (Ill. App. Ct. 1976). Plaintiff, of course, has the burden of proof. *Valenti v. Qualex, Inc.*, 970 F.2d 363, 366 (7th Cir. 1992).

Defendant argues that use provisions are construed strictly against the lessor, citing *In re Estate of Corbin*, 245 N.E.2d 117, 125 (Ill. App. Ct. 1969). Even if that were true as a general rule, the Court need not address the issue because the evidence in this case establishes that the Lease provisions were drafted solely by defendant. In fact, the Lease is essentially a form lease used by defendant for all of its Dollar General stores; therefore, the general rule is that the lease terms are construed against the defendant. *See Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (Ill. 1998) (citations omitted) ("[A]ny ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision.").

The evidence establishes that plaintiff was concerned with the use provision from the very beginning. Initially, plaintiff attempted to change the language in the use provision to specifically limit the sale of grocery items to "incidental" sales. Vena Bridgeman, Dollar General's leasing manager, however, responded that the language in the lease was its standard language and refused to make any changes. Ordinarily, plaintiff's acceptance of the lease language under such circumstances might indicate an acceptance of the fact that the language in the use provision did not limit Dollar General's sales of grocery items in any way - or, at least,

4

not in the way plaintiff desired. However, James Matanky, plaintiff's manager in charge of negotiating the lease, turned to Terry Bailey, defendant's real estate field representative, with his concerns about a possible conflict with plaintiff's anchor grocery store. In response to Matanky's expressions of concern that Dollar General's sales could conflict with the exclusivity rights of the grocery anchor, Bailey told Matanky to go look at the Dollar General stores in the area to get an idea of what those stores sold so that plaintiff could determine that it "shouldn't be a problem."[2] At the time Bailey issued this invitation he was aware that plaintiff's concern was that the use provision language would allow Dollar General's sales to compete with the grocery anchor. Bailey had to intend, therefore, that plaintiff would base its interpretation of what "general merchandise of the type sold in other Dollar General Stores" meant, on what Matanky saw in the other stores. Thus, by referring Matanky to his other stores for a determination as to what the Lease language meant, Bailey was, in effect, defining the terms of the use provision of the Lease by reference to what Matanky would observe in his review of the other Dollar General stores in the area. What plaintiff saw did not include freezers, refrigerators, or cooled or frozen groceries or foods. Therefore, the Court finds that the plaintiff has established by a preponderance of the evidence that the language of the Lease, as understood by both parties at the time the Lease was entered into, limited the sale of foods by Dollar General to non-perishable, non-refrigerated foods. The Court further finds that Dollar General is in breach of this provision by selling

---

[2]Mr. Bailey and others testified that he was only involved in negotiating "business points" in the lease, which did not include such things as the use restriction provision. However, Matanky and Ms. Terry Jo Cox, who was in charge of leasing for Matanky Realty Group at Orchard Park Plaza, both testified that during the negotiation period, they spoke to Mr. Bailey about the use provision and he did invite them to visit the Dollar General stores in order to satisfy themselves. The Court finds the latter testimony more believable.

5

perishable, refrigerated foods in more than insignificant amounts.

It is also unreasonable to conclude that the language was intended to allow this crucial fact to change anytime Dollar General simply decided to change what was sold at its other stores to include perishable and refrigerated foods. Such an interpretation flies in the face of what both parties knew were plaintiff's concerns regarding the use provision language. Matanky was concerned about determining whether the Dollar General store on the Premises was going to pose a conflict with his anchor store during the entire term of the Lease, not just for that one moment in time when Bailey told him to allay his concerns by reviewing what was being sold at the other Dollar General stores in the area. Defendant knew that this was plaintiff's concern because defendant was aware of the contract exclusivity provision in plaintiff's lease with the grocery anchor store and had spoken to Matanky.

The evidence is uncontradicted that the sale of refrigerated foods did compete significantly with the grocery anchor store. Matanky testified to a resulting drop in sales by the grocery anchor store which, by virtue of the compensation provisions in its lease with the grocery store anchor, did or would continue to result in a loss of compensation to Orchard Park Plaza. Matanky also testified that the management of the grocery store anchor complained that Dollar General's sales of groceries was cutting significantly into the anchor's sales and that he, Matanky, would have to do something about that or offer him some concessions to make up for the loss of sales. Further, Matanky testified, which was again uncontradicted, that he was in the process of negotiating the concessions plaintiff would make to its grocery anchor store as compensation for the store's loss of sales due to plaintiff's failure to ensure the grocery store's exclusive right to sell frozen or refrigerated groceries within Orchard Park Plaza. This also is an

item of damages resulting from defendant's breach of the lease which is reasonably likely to occur in the future. However, Matanky also testified that the resulting loss to the plaintiff's earnings from the drop in sales and the cost of the contemplated concessions had not been quantified. Where the existence of damages has been proven, but the amount of such damages has not been established, an award of nominal damages is appropriate. *Wilson v. DiCosola*, 815 N.E.2d 975, 980 (Ill. App. Ct. 2004). The Court, therefore, awards nominal damages in the amount of one dollar for the breach of contract claim in Count I.

Article XVI(1)(D) of the Lease provides that: "Any default by Lessee of any term or condition hereof other than the payment of sums due hereunder may be restrained or enforced by injunction." (Ex. 1, Lease, Article XVI(1)(D).) Accordingly, the Court, having found defendant to be in default of a term in the lease, grants injunctive relief. The Court enjoins defendant from selling refrigerated and frozen foods and groceries at the Premises and orders defendant to remove the refrigerators and freezers from the Premises.

Article XXIX(n) of the Lease provides that in the event of a lawsuit, "Lessee shall pay Lessor a reasonable sum for attorneys' fees and other costs of suit which shall be deemed to have accrued at the commencement of such action and shall be paid together with interest at the Lease Interest Rate whether or not such action is prosecuted to judgement [sic]." Accordingly, the Court awards reasonable attorneys' fees and other costs of suit to plaintiff. Plaintiff is directed to file a motion for attorneys' fees in accordance with the procedure set forth in Local Rule 54.3, entitled "Attorney's Fees and Related Non-taxable Expenses."

Count II of the Complaint alleges defendant tortiously interfered with plaintiff's prospective economic advantage by selling perishable refrigerated foods. In its closing argument, plaintiff identified the payment it was entitled to under its lease with the grocery anchor store as the prospective economic advantage with which defendant had interfered. However, plaintiff was unable to identify any evidence to prove that defendant was aware of plaintiff's expectancy. The Court finds that plaintiff has failed to establish that defendant was aware of plaintiff's expectancy or that plaintiff intended to interfere with defendant's prospective economic advantage. The Court, therefore, finds for defendant and against plaintiff on Count II of the Complaint.

The Court finds that Count III does not constitute a separate cause of action but is merely a request for a specific type of relief, an injunction, for the causes of action in Counts I and II. By providing injunctive relief for the breach of contract action in Count I and finding that plaintiff is not entitled to any relief as to Count II, the Court has addressed the request for injunctive relief.

Based on the evidence presented at trial, the Court finds that defendant has failed to establish its affirmative defenses of failure to mitigate damages, unclean hands, failure to state a claim, statute of frauds, and that the attorney's fees provision of the contract is contrary to public policy.

In summary, the Court finds for the plaintiff on its breach of contract claim in Count I and awards: (1) nominal damages of one dollar, (2) injunctive relief per the provisions in the Lease and (3) attorneys' fees per the provisions in the Lease. The Court finds for the defendant as to

Count II. Count III is mooted by the Court's ruling as to Counts I and II. The Court further finds that defendant has failed to prove that its affirmative defenses preclude relief in this case.

Dated: April 18, 2006

**SO ORDERED**           **ENTER:**

**RONALD A. GUZMAN**
**U.S. District Judge**

G:\Masterlist Folders\Orchard VsDolgencorp 04-4233\moo.wpd